ALLSTATE INSURANCE COMPANY *v.*
BENNIE FERRANTE, ADMINISTRATOR
(ESTATE OF SYLVIA FERRANTE)
(12707)

PETERS, C. J., HEALEY, SHEA, DANNEHY and S. FREEDMAN, Js.

Argued October 7—decision released December 2, 1986

*Jeffrey L. Williams,* with whom, on the brief, was *Carl F. Yeich,* for the appellant (plaintiff).

*Stanley Cohen,* with whom, on the brief was *Gary Greene,* for the appellee (defendant).

PETERS, C. J. The sole issue in this case, which comes to us by way of reservation, is whether an occupant

of an automobile is entitled to aggregate uninsured motorist coverage for each of two automobiles separately covered by one automobile insurance policy. The plaintiff insurer, Allstate Insurance Company, brought this suit for a declaratory judgment, pursuant to General Statutes § 52-29,[1] to determine the extent of its potential liability to the defendant, Bennie Ferrante, administrator of the estate of Sylvia Ferrante, who died as a result of injuries sustained in a two car motor vehicle accident.[2] The trial court granted a motion for reservation upon stipulated facts to determine the amount of uninsured motorist coverage available to satisfy the claim of the defendant administrator. We hold that the reserved question is to be answered in the affirmative.

The parties stipulated to the following facts. On October 7, 1982, Sylvia Ferrante was a passenger in an automobile owned by Frank DeSouza and operated by Carolyn DeSouza. Sylvia Ferrante died as a result of a collision on route 3, in Rhode Island, between the DeSouza automobile and an automobile owned by Rene Laliberte. Damages attributable to Sylvia Ferrante's fatal injuries could exceed $200,000.

Both of the automobiles involved in the accident were covered by insurance. A Continental Insurance Company policy, for the Laliberte automobile, provided bodily injury liability insurance up to a limit of $25,000 per person. Pursuant to that policy, Continental Insurance paid the defendant $25,000 on behalf of its insured, Laliberte.

---

[1] "[General Statutes] Sec. 52-29. SUPERIOR COURT MAY DECLARE RIGHTS AND LEGAL RELATIONS. (a) The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.

"(b) The judges of the superior court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

[2] During the pendency of this appeal, Andrew Ferrante was substituted for Bennie Ferrante, the latter now being deceased.

Because this payment did not provide full compensation for the defendant's damages, the defendant then pursued his insurance claims under the insurance policy that the plaintiff Allstate had issued to Frank DeSouza. That multiple vehicle policy included underinsured and uninsured motorist insurance for each of DeSouza's two cars: the automobile involved in the accident and a second unrelated automobile. As to each automobile, this insurance policy provided liability coverage of $100,000 per person and $300,000 per accident, and uninsured motorist coverage of $100,000 per person and $300,000 per accident. By the express terms of the policy, its uninsured motorist coverage included accidents involving underinsured as well as uninsured motorists. DeSouza had paid a separate premium for the uninsured motorist coverage applicable to each DeSouza automobile. Neither Sylvia Ferrante nor the defendant, her personal representative, was a named insured under the Allstate policy, and neither of them had paid any premiums under this policy.

The plaintiff paid the defendant $75,000, which represented the limit of its liability under the uninsured motorist coverage applicable to the DeSouza automobile in which the defendant was a passenger. The disagreement between the parties concerns the defendant's claim that he is also entitled to reach the uninsured motorist coverage applicable to the second DeSouza automobile. The defendant maintains that he may aggregate or "stack" the uninsured motorist coverage for the two DeSouza automobiles insured under the Allstate policy. The plaintiff responds that the insurance policy precludes stacking on behalf of someone who was merely a passenger in one of the covered vehicles.

In addressing the question that has been reserved to us, we may usefully begin by noting what is *not* at issue. There is no dispute that the Allstate insurance

policy, in its uninsured motorist coverage, expressly creates two classes of insureds: (1) the named policyholder and resident members of his family, and (2) other occupants of an insured car.[3] There is likewise no dispute that the provisions of the insurance policy that define the scope of the plaintiff's liability make no express distinction between these two classes in defining the extent of coverage for injuries attributable to uninsured motorists. Furthermore, there is no dispute that, if the claimant had been either the policyholder or a resident member of his family, our prevailing case law would render unenforceable the language in the insurance policy that purports, without class distinction, to preclude "stacking." Finally, there is no dispute that, if the defendant were to be entitled to "stack," the recovery would not exceed the damages actually attributable to the injuries that Sylvia Ferrante sustained.

What we must decide, therefore, is whether the fact that the defendant's decedent in this case was a mere passenger justifies enforcing a provision in an insurance contract that we have previously held unenforceable as violative of governing insurance statutes and regulations. That question cannot be answered without a careful review of the reasoning of our prior case law on "stacking."

This court has, on a number of occasions, considered the "stacking" of uninsured and underinsured automobile insurance coverage for two passenger cars. Three principles of law emerge from our cases. First, we have noted that the issue of aggregation of coverage for multiple vehicles can arise with regard either to "interpolicy stacking" under separate and distinct insurance policies, or to single policy, "intra-policy stacking."

[3] The Allstate policy provides, in relevant part: "Persons insured (1) You and any resident relative. (2) Any person while in, on, getting into or out of your insured auto with your permission."

Regardless of this difference in form, we have repeatedly held that General Statutes § 38-175c permits an injured claimant to "stack" coverages.[4] *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 453, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 394–97, 446 A.2d 1059 (1982); *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 333–35, 387 A.2d 539 (1978); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 448–49, 370 A.2d 1006 (1976). Second, in the context of cases involving "intra-policy stacking," such as the one presently before us, we have held that such stacking is particularly appropriate when, as here, " 'each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles.' " *Safeco Ins. Co.* v. *Vetre,* supra, 334; *Nationwide Ins. Co.* v. *Gode,* supra, 395. Third, relying on regulations

[4] "[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator

enacted pursuant to General Statutes §§ 38-175a and 38-175c, we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes. *Dixon* v. *Empire Mutual Ins. Co.*, supra, 452–53; *Nationwide Ins. Co.* v. *Gode,* supra, 398–99; *Safeco Ins. Co.* v. *Vetre,* supra, 332–33; *Pecker* v. *Aetna Casualty & Surety Co.,* supra, 448–51. That regulation permits an insurer to limit its liability to the extent that damages have been paid by or on behalf of any person responsible for the injury, have been paid or are payable under any workers' compensation or disability benefits law, have been paid under the policy in settlement of a liability claim, or have been paid or are payable under any provisions of the policy for direct indemnity for medical expense or basic reparations

---

if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on or after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."

benefits. The regulation nowhere authorizes an insurer contractually to interdict "stacking."[5] Accordingly, we have held that uninsured and underinsured motorist coverage can be "stacked" despite language in the relevant insurance policy that purports explicitly to prohibit "stacking" of such coverage in the event that two automobiles are insured under the same policy. *Dixon* v. *Empire Mutual Ins. Co.,* supra; *Nationwide Ins. Co.* v. *Gode,* supra; *Safeco Ins. Co.* v. *Vetre,* supra; *Pecker* v. *Aetna Casualty & Surety Co.,* supra.

The plaintiff argues that these principles do not apply here because the underlying cases are distinguishable. According to the plaintiff, a claimant who is a mere passenger has a lesser claim to "stack" uninsured or underinsured motorist coverage, for two reasons. First, the plaintiff maintains that the statutes and the regulations requiring uninsured motorist coverage do not expressly require that such coverage be made available to the mere occupant of an insured automobile who is neither the policyholder nor a resident relative. Second, the plaintiff argues that "stacking" is contractually inappropriate because, while a policyholder who

---

[5] Section 38-175a-6 of the Regulations of Connecticut State Agencies provides in relevant part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS . . . . (d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workmen's compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under the bodily injury liability coverage to the extent of the payment."

We note that the legislature, although on notice about our consistent interpretation of the relevant statutes and regulations, has taken no action to indicate its disagreement with our construction of the legislative mandate.

pays a separate premium for multiple coverages can reasonably expect to aggregate the amounts that he is entitled to recover, a mere occupant or passenger cannot reasonably be said to have entertained such expectations. The plaintiff urges us, therefore, to follow the rulings in other jurisdictions that have denied mere occupants the right to "stack" uninsured or underinsured motorist coverages under a single policy covering multiple automobiles. See, e.g., *Hampton* v. *Allstate Ins. Co.*, 126 Ariz. 403, 405, 616 P.2d 78 (1980); *Sharples* v. *General Casualty Co. of Illinois,* 85 Ill. App. 3d 899, 902, 407 N.E.2d 674 (1980); *Pettid* v. *Edwards,* 195 Neb. 713, 719, 240 N.W.2d 344 (1976); *General Accident Ins. Co.* v. *St. Peter,* 334 Pa. Super. 6, 11, 482 A.2d 1051 (1984); *Abshere* v. *Prudential Ins. Co.,* 38 Wash. App. 1, 2–6, 683 P.2d 625, cert. denied, 102 Wash. 2d 1013 (1984).[6] We find neither of the plaintiff's arguments persuasive.

[6] A number of the cases denying a mere occupant the right to "stack" multiple coverages are clearly distinguishable because the cases involved insurance for a fleet of vehicles. See, e.g. *Holloway* v. *Nationwide Mutual Ins. Co.,* 376 So. 2d 690, 694–95 (Ala. 1979); *Ohio Casualty Ins. Co.* v. *Stanfield,* 581 S.W.2d 555, 556–59 (Ky. 1979); *Linderer* v. *Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. App. 1980); *Utica Mutual Ins. Co.* v. *Contrisciane,* 504 Pa. 328, 336–38, 473 A.2d 1005 (1984); *American Universal Ins. Co.* v. *Russell,* 490 A.2d 60, 62–63 (R.I. 1985); *Cunningham* v. *Ins. Co. of North America,* 213 Va. 72, 74–77, 189 S.E.2d 832 (1972); *Continental Casualty Co.* v. *Darch,* 27 Wash. App. 726, 731, 620 P.2d 1005 (1980). Issues arising under a commercial umbrella liability insurance policy are similarly not before us today. See, e.g., *Trinity Universal Ins. Co.* v. *Metzger,* 360 So. 2d 960, 962 (Ala. 1978); *Hartbarger* v. *Country Mutual Ins. Co.,* 107 Ill. App. 3d 391, 394–96, 437 N.E.2d 691 (1982); *Southern American Ins. Co.* v. *Dobson,* 441 So. 2d 1185, 1190–92 (La. 1983); *Matarasso* v. *Continental Casualty Co.,* 82 App. Div. 2d 861, 862, 440 N.Y.S.2d 40 (1981). Finally, such cases as *Lumbermens Mutual Casualty Co.* v. *Martin,* 399 So. 2d 536, 537–38 (Fla. App. 1981), and *Block* v. *Reliance Ins. Co.,* 433 So. 2d 1040, 1045 (La. 1983), are unpersuasive because they arise in the different context of state statutes that, in marked distinction to the prevailing legislative pattern in this state, expressly prohibit "stacking" of uninsured motorist coverages except under certain designated circumstances. See, e.g., Fla. Stat. Ann. § 627.4132 (West 1984); La. Rev. Stat. Ann. § 22: 1406 (D) (1) (c) (West 1978).

Addressing first the plaintiff's legislative argument, we note that our cases have uniformly authorized the "stacking" of coverages for multiple vehicles without any inquiry into the auspices of the insured claimant's standing to recover. We have not discovered anything in the relevant statutory or regulatory language that suggests that stacking is to be limited to injured insured persons of a certain class, nor has the plaintiff been able to point to any legislative distinction of this sort. Nothing in this legislative record ties the right to "stack" to the degree of intimacy between the claimant and the policyholder. It is self-evident that, in all cases of "stacking," the injured person can only have been the occupant of one of the multiply-insured vehicles. We have, however, characterized our insurance statutes as "person oriented" rather than "vehicle oriented" and have thus emphasized that insurance coverage "attaches to the insured person, not the insured vehicle." *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 248, 449 A.2d 157 (1982). From that perspective, the crucial question is whether an injured person has coverage under the terms of the policy, and that question must be answered in the affirmative in this case. See also *Estate of Calibuso* v. *Pacific Ins. Co., Ltd.*, 62 Hawaii 424, 428–32, 616 P.2d 1357 (1980).

Even if we were to view "stacking" as not unequivocally mandated by statute with respect to a mere occupant, "stacking" would still be appropriate in this case because it has not been explicitly precluded by the terms of the Allstate insurance contract. The terms of the Allstate policy nowhere make an explicit distinction, for coverage purposes, between its two classes of insureds. The policy's only express antistacking provision is a clause denominated "limits of liability," which purports, for all classes of insureds, to limit the plaintiff's liability for uninsured motorist coverage to

"the amount shown for any one auto."[7] In *Nationwide Ins. Co.* v. *Gode,* supra, 397–400, we held a virtually identical clause to have been unenforceable. The language of the Allstate clause gives no clue that it was intended to operate more restrictively for mere passengers than for others covered by the insurance policy. On the face of this policy, therefore, the benefits under this insurance policy flow equally to all the persons insured thereunder. *Sayers* v. *Safeco Ins. Co. of America,* 628 P.2d 659, 661–62 (Mont. 1981); see also *Allstate Ins. Co.* v. *Anderson,* 87 Mich. App. 539, 542, 274 N.W.2d 66 (1979), rev'd on other grounds, 409 Mich. 878, 295 N.W.2d 228 (1980).

The plaintiff maintains that its failure expressly to preclude stacking is not fatal to its position because the injured claimant in this case, having not paid any of the premiums for any of the DeSouza automobile insurance, cannot reasonably have expected to benefit from multiple coverage of the DeSouza automobiles. That argument fails, however, because it focuses on the expectations of the wrong person. If we were to inquire into the reasonable expectations generated by this contract, we would have to look to the intentions of the purchaser of the policy, the policyholder who agreed to pay separate premiums for coverage of each of his two automobiles. The stipulated facts do not tell us what the policyholder intended when he purchased a

---

[7] The limits of liability clause in the Allstate insurance contract provides, in relevant part: "Limits of Liability

"The coverage limit stated on the declarations page for:

"(1) 'each person' is the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident.

"(2) 'each accident' is the total limit for all damages arising out of bodily injury to two or more persons in any one motor vehicle accident.

"The uninsured motorists limits apply to each insured auto as stated on the declarations page. This means the insuring of more than one person or auto under this or other auto policies won't increase our uninsured motorists limit of liability beyond the amount shown for any one auto, even though a separate premium is charged for each auto."

policy that divides into two classes those claimants who qualify as insureds because of a compensable injury arising out of the use of one of his covered automobiles. Bearing in mind that the class of mere passengers would include nonresident members of the policyholder's own family, as well as other occupants of one of his automobiles, we do not find it implausible that the policyholder might well have intended to purchase protection for all those occupying either of the two insured cars. To the extent, therefore, that the reasonable expectations of the insured are relevant in determining the amount of insurance coverage that has been obtained, these expectations do not preclude Allstate's liability under the terms of the policy. See *Jeffries* v. *Stewart,* 159 Ind. App. 701, 708-709, 309 N.E.2d 448 (1974); *Cacavas* v. *Maine Bonding & Casualty Co.,* 128 N.H. 204, 512 A.2d 423, 425–26 (1986).

The question that was reserved to this court stated the issue as follows: "Is Sylvia Ferrante, the defendant's decedent, entitled to uninsured motorist coverage under the Allstate policy applicable to the second DeSouza vehicle, which the defendant's decedent was not occupying at the time of the accident, and for which said decedent paid no premium?" For the reasons stated above, our answer to the reserved question is "Yes."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.