RAY NICOLLETTA, ADMINISTRATOR (ESTATE OF KRISTI
NICOLLETTA), ET AL. *v.* NATIONWIDE
INSURANCE COMPANY
(13602)

STEVEN J. PUTNAM *v.* NATIONWIDE
INSURANCE COMPANY
(13603)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 9—decision released June 27, 1989

*Carl E. Cella,* for the appellant (defendant in both cases).

*John F. Wynne, Jr.,* for the appellees (plaintiffs in the first case).

*Susan M. Cormier,* with whom was *Alexandra Davis,* for the appellee (plaintiff in the second case).

COVELLO, J. The dispositive issue in these consolidated cases is whether General Statutes § 38-175c (a) (2) furnishes a statutory basis for imposing a limitation on the aggregation (stacking) of uninsured and underinsured motorist coverage in an automobile liability insurance policy. We agree with the trial court's conclusion that it does not and, therefore, find no error.

The facts in both cases are not in dispute and were presented to the trial court as stipulations by the parties.

The Nicolletta action: On November 16, 1986, Kristi Nicolletta was killed while riding as a passenger in an automobile owned and operated by Charlene Ives. The Ives vehicle had liability insurance coverage of $20,000 which was paid to Nicolletta's estate.

At the time of the accident there was a Nationwide Insurance Company automobile liability insurance policy in force insuring two vehicles owned by Carol Nicoletta, Kristi Nicoletta's mother. Kristi Nicolletta qualified for coverage under this policy. Each of the insured vehicles was separately described in the policy. Further, each vehicle's insurance coverage was

individually listed and a separate premium was shown for the type of coverage on each vehicle.

Each vehicle had uninsured motorist coverage in the amount of $50,000 per person. The uninsured motorist coverage, however, was subject to a limitation as to the amount of money that would be paid by reason of the coverage on a second vehicle. This limitation was contained in a separate policy endorsement that provided: "[T]he insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits; in no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us. This condition, as it applies to the insuring of more than one vehicle under this policy or the insuring of vehicles under other policies issued by us, *does not apply to the extent the limits of liability do not exceed the limits equal to the minimum limits required by Section 38-175[c]*[1] *of the Connecticut Insurance Law.*" (Emphasis added.)

---

[1] General Statutes § 38-175c (a) (2) provides: "Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured."

General Statutes § 14-112 provides in part: "To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle when, in the opinion of the commissioner, such person has violated any of the provisions of section 14-222, section 14-224 or subsection (a) of section 14-227a . . . the commissioner shall require from such person proof of financial responsiblility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars . . . ."

Nicolletta's estate filed an underinsured[2] motorist claim against the defendant. The defendant paid the Nicolletta estate $70,000 (less credits which are not in dispute) which it contended represented the aggregate "stacked" uninsured motorist coverage on the two vehicles insured under the Nationwide policy. The defendant conceded that there was $50,000 due by reason of the uninsured motorist coverage on one of the two Nicolletta vehicles, but maintained that the language of the endorsement limited the amount it was required to pay by reason of the uninsured motorist coverage on the second vehicle to the statutory minimum of $20,000 contained in § 38-175c by reason of its reference to General Statutes § 14-112. Nicolletta's estate, on the other hand, contended that "stacking" entitled it to the full $50,000 in uninsured motorist coverage on each of the two insured vehicles, for a total of $100,000.

The parties submitted their dispute to arbitration, an option available under the policy.[3] The arbitrators ruled in favor of Nicolletta's estate and concluded that the aggregate uninsured motorist coverage under the policy was $100,000. The defendant thereafter filed the present action in the Superior Court seeking to vacate the arbitration award. See General Statutes § 52-418. Nicolletta's estate filed a counter application to confirm the award. See General Statutes § 52-417. The trial court affirmed the award.

---

[2] The policy provided: "An uninsured motor vehicle is . . . one which is underinsured. This is a motor vehicle for which bodily injury liability coverage or bonds are in effect; however, their total amount is less than the limits of this coverage."

[3] Where a policy contains a provision for binding arbitration it must include a provision for final determination of the insurance coverage in the arbitration proceedings. General Statutes § 38-175c. For this reason the coverage issues in this arbitration proceeding are reviewable because we have treated such proceedings as compulsory arbitration. *American Universal Ins. Co. v. DelGreco*, 205 Conn. 178, 187–88, 530 A.2d 171 (1987).

The Putnam action: On April 8, 1986, Steven J. Putnam was injured while a passenger in an uninsured automobile. His damages were $200,000. At the time of the accident there was a Nationwide automobile liability insurance policy in force insuring two vehicles owned by Wallace Putnam and Jean Putnam, Steven Putnam's parents. Steven Putnam qualified for coverage under this policy as a resident relative of the Putnams. Each of the insured vehicles was separately described in the policy. Each vehicle's insurance coverage was individually listed and a separate premium was shown for the type of coverage on each vehicle.

Each vehicle had uninsured motorist coverage in the amount of $100,000 per person. The uninsured motorist coverage, however, was subject to the same limitation as to the amount of payment that would be due because of coverage on the second vehicle by reason of the identical policy endorsement which had existed in the Nicolletta action.

Steven Putnam filed an uninsured motorist claim against the defendant. The defendant paid him $120,000 which it contended represented the aggregate "stacked" uninsured motorist coverage on the two vehicles insured under its policy. Again, the defendant conceded that there was $100,000 due by reason of the uninsured motorist coverage on one of the two Putnam vehicles, but maintained that the language of the endorsement limited the amount it was required to pay by reason of the uninsured motorist coverage on the second vehicle to the statutory minimum of $20,000 contained in § 38-175c by reason of its reference to § 14-112. Steven Putnam advanced the same argument as had Nicolletta and contended that "stacking" entitled him to the full $100,000 in uninsured motorist coverage per vehicle, for a total of $200,000.

The parties submitted their dispute to arbitration in accordance with the policy. This time, the arbitrators ruled that the endorsement did limit the amount due and concluded that the aggregate uninsured motorist coverage under the policy was $120,000. The plaintiff Steven Putnam thereafter filed an application in the Superior Court seeking to vacate the arbitration award. See § 52-418. The trial court vacated the award.

"This court has, on a number of occasions, considered the 'stacking' of uninsured and underinsured automobile insurance coverage for two passenger cars. Three principles of law emerge from our cases. First, we have noted that the issue of aggregation of coverage for multiple vehicles can arise with regard either to 'interpolicy stacking' under separate and distinct insurance policies, or to single policy, 'intra-policy stacking.' Regardless of this difference in form, *we have repeatedly held that General Statutes § 38-175c permits an injured claimant to 'stack' coverages.* . . . Second, in the context of cases involving 'intra-policy stacking,' such as the one presently before us, we have held that such stacking is particularly appropriate when, as here, ' "each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles." ' *Safeco Ins. Co.* v. *Vetre,* [174 Conn. 329, 334, 387 A.2d 539 (1978)]; *Nationwide Ins. Co.* v. *Gode,* [187 Conn. 386, 395, 446 A.2d 1059 (1982)]. Third, relying on regulations enacted pursuant to General Statutes §§ 38-175a and 38-175c, *we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes.* . . . That regulation permits an insurer to limit its liability

to the extent that damages have been paid by or on behalf of any person responsible for the injury, have been paid or are payable under any workers' compensation or disability benefits law, have been paid under the policy in settlement of a liability claim, or have been paid or are payable under any provisions of the policy for direct indemnity for medical expense or basic reparations benefits. *The regulation nowhere authorizes an insurer contractually to interdict 'stacking.'* Accordingly, we have held that uninsured and underinsured motorist coverage can be 'stacked' despite language in the relevant insurance policy that purports explicitly to prohibit 'stacking' of such coverage in the event that two automobiles are insured under the same policy." (Emphasis added.) *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 481–84, 518 A.2d 373 (1986).

Despite these frequently articulated principles, the defendant argues that they are, in effect, not applicable to the present situation because § 38-175c (a) (2) impliedly provides that the uninsured motorist coverage, *at either the insured's or the carrier's option,* need be no more than the minimum required by General Statutes § 14-112, i.e., $20,000. This is not the case.

The defendant would have us read § 38-175c (a) (2) as follows: "[E]very . . . policy . . . shall provide uninsured motorist coverage with limits . . . equal to those purchased [by the insured] to protect against loss resulting from the liability imposed by law . . . but not less than the limits specified in subsection (a) of section 14-112 [i.e., $20,000]." Thus, argues the defendant, it may issue a policy providing uninsured motorist coverage in an amount prescribed by the insured as to one automobile, but limit the aggregation of coverages in the event that two vehicles are insured, to no more than an additional $20,000. Such a construction overlooks critical language in the statute.

Section 38-175c (a) (2) actually reads in relevant part: "[E]very . . . policy . . . shall provide uninsured motorist coverage with limits . . . equal to those purchased [by the insured] to protect against loss resulting from the liability imposed by law *unless the insured requests in writing a lesser amount,* but not less than the limits specified in subsection (a) of section 14-112 [i.e., $20,000]." (Emphasis added.) The phrase "but not less than the limits specified in subsection (a) of section 14-112 [i.e., $20,000]" refers to and limits the amount to which the *insured* may request a reduction in uninsured motorist coverage. When read in its totality, it is clear that the statute does not give an insurance carrier a similar option to reduce the coverage.

The history of Public Acts 1983, No. 83-461 (creating § 38-175c [a] [2]) makes it clear that this was the legislature's intention: "Under sub-section 2, it would require each insured who purchases more than the legally required amount of liability insurance would [sic] receive the same amount of uninsured motorist coverage. *The insured would have an opportunity to waive in writing the additional uninsured motorist coverage.* This change would increase the consumer's awareness of the value of low-cost uninsured motorist coverage which protects the insured and his family members. Apparently many drivers purchase $100,000.00 or more of liability coverage but leave their uninsured motorist coverage at the minimum of $20,000.00–$40,000.00. *Sub-section 2 which gives such a driver an increased amount of uninsured motorist coverage, unless he makes a conscious decision not to purchase it.*" (Emphasis added.) 26 S. Proc., Pt. 9, 1983 Sess., p. 3055, remarks of Senator Wayne A. Baker.

We conclude that § 38-175c (a) (2) does not provide a statutory basis for the payment limitation contained in these policies. Since the defendant does not claim any regulatory basis for the reduction in its liability for

the uninsured coverage here in issue; *Allstate Ins. Co.* v. *Ferrante,* supra, 483; we further conclude that the trial court correctly ruled upon both arbitration awards in sustaining the claims advanced by the respective plaintiffs.

There is no error.

In this opinion the other justices concurred.