[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The principal issue presented to the court is whether the plaintiffs' application to vacate the arbitration award in this case should be granted for the reason that the arbitrators exceeded their powers in basing the award on a misinterpretation and misapplication of the law regarding stacking of uninsured/underinsured motorist coverage.
The court concludes that because the arbitrators, misinterpreted and incorrectly applied the law of stacking to the facts of this case, the award must be vacated.
FACTS
The parties to this action stipulated to the facts of this case at the arbitration proceeding on October 25, 1991.
On October 13, 1990, Melissa Kent was killed in an automobile accident in which the tortfeasor's vehicle was underinsured. The tortfeasor's vehicle had liability coverage in the amount of $20,000. At the time of the accident, the plaintiffs Donald and Kristine Kent, the parents of Melissa Kent, were the insureds under an automobile liability insurance policy issued by the defendant Middlesex Mutual Insurance Company. Melissa Kent qualified for coverage under this policy as a resident relative. The policy insured two vehicles and provided 1) liability coverage in the amount of $100,000 per CT Page 7850 person/$300,000 per accident, and 2) uninsured/underinsured motorist coverage in the amount of $100,000 per person/$300,000 per accident. Defendant Middlesex Mutual charged a separate premium for each vehicle for liability coverage, but charged a single premium of $42.00 for uninsured/underinsured motorist coverage for both vehicles, noting in the Declarations Page that, with regard to the $42.00 premium, there was only "One Premium Per Policy."
Plaintiffs valued their loss to be in excess of $200,000. The estate of Melissa Kent was paid $20,000 by the tortfeasor's insurance company, and the plaintiffs, the co-administrators of their daughter's estate, filed an underinsured motorist claim with defendant Middlesex Mutual seeking a "stacked" amount of $200,000 reduced by the amount paid by the tortfeasor's insurance company. The defendant paid the estate of Melissa Kent $77,000, which it contended was its "pro rata share" of $100,000 of underinsured motorist coverage.
Plaintiffs and defendant submitted their dispute over the available amount of underinsured motorist coverage to private arbitration, and the arbitration hearing was held before a panel of three arbitrators on October 25, 1991 and November 18, 1991. The majority of the panel issued a memorandum of decision dated January 22, 1992. The majority subsequently issued an "Amended Memorandum of Decision" dated January 31, 1992, in which the amount of the award was amended. The majority found that the Middlesex Mutual policy provided "a total uninsured/underinsured motorist coverage limit of $100,000 per person". The majority concluded that a payment of $77,000 (Middlesex Mutuall's "pro rata share" of $100,000 after appropriate setoffs) was already made by Middlesex Mutual to plaintiffs prior to the arbitration hearing and, therefore, found no additional sums were due the claimants.
In its decision, the majority found that "a reasonable person in the position of the Kents could not have had an objectively reasonable expection of stacked coverage under the circumstances presented in this case." The majority based the above finding on three facts: (1) only a single premium was charged for total uninsured/underinsured motorist coverage for both vehicles; (2) the policy language (specifically, the subsection entitled "Limits of Liability"[1]) "appears to have been drafted with a view toward preventing an aggregation of coverage"; and (3) "there is nothing about the facts of this case which would justify an expectation of stacked coverage on the part of the claimants."
One member of the panel dissented from the opinion of the majority, finding that the "well-settled principles of stacking" CT Page 7851 should have been followed in determining the available amount of underinsured motorist coverage. The dissenting arbitrator concluded that the plaintiffs were entitled to stacked coverage in the amount of $200,000 and an award of $180,000 (i.e. $200,000 minus $20,000 setoff for tortfeasor's payment).
On February 21, 1992, plaintiffs Donald and Kristine Kent filed a timely application to vacate the arbitration award pursuant to General Statutes 52-418. Plaintiffs move to vacate the award on the ground that "the arbitrators have exceeded their powers by incorrectly deciding the issue of whether the defendant was required to `stack' the Uninsured/Underinsured Motorist coverage under the Kent policy which insured two vehicles." Plaintiffs further maintain that the arbitration award is based on "a misapplication of the law." Plaintiffs seek 1) an order vacating the award pursuant to General Statutes52-418(a); 2) an order for a hearing to show cause why the application should not be granted; and 3) an order staying any enforcement proceedings by the defendant as authorized by General Statutes 52-420(c). On February 11, 1992, the court ordered a hearing to show cause why the application should not be granted.
On March 16, 1992, defendant Middlesex Mutual filed an objection to the application to vacate.
On March 23, 1992, plaintiffs filed a memorandum of law in support of their application to vacate, accompanied by supporting documentation consisting of the arbitrators' Memorandum of Decision, the arbitrators' Amended Memorandum of Decision, the Dissent, excerpts from two Middlesex Mutual Personal Automobile Policies, the plaintiffs' application for Middlesex Mutual auto insurance, the Declarations page of the policy, miscellaneous documents, and excerpts from the transcript of the arbitration hearing.
On April 13, 1992, defendant filed a memorandum of law in opposition to the application to vacate, accompanied by supporting documentation including a complete transcript of the arbitration hearing.
On April 13, 1992, plaintiffs' application to vacate was argued before this court.
Subsequent to the argument, defendant filed a supplemental memorandum dated July 6, 1992, and plaintiff filed a reply to the supplemental memorandum dated July 16, 1992.
DISCUSSION OF LAW CT Page 7852
General Statutes 38a-336(c) (formerly 38-175c(a)(1)) required that "[e]ach automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." General Statutes38a-336(c). The Connecticut Supreme Court has construed 387-175c(a)(1) to make "arbitration of insurance coverage issues compulsory." (Emphasis in original.) Bodner v. United Services Automobile Association, 222 Conn. 480, 488, ___ A.2d ___ (1992). "`[W]here judicial review of compulsory arbitration proceedings required by 38-175c(a)(1) is undertaken under General Statutes 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators.'" Id., 486, quoting American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171 (1987).
In their memorandum of law in support of the application to vacate, plaintiffs argue that the majority of the arbitration panel committed two errors of law. First, plaintiffs argue that the majority incorrectly concluded that stacking is prohibited when a policy which insures two vehicles charges a "single premium" for uninsured/underinsured motorist coverage but charges a separate premium per vehicle for other coverages. In support of this conclusion, defendant offered, at the arbitration hearing, the testimony of its Vice President and Chief Actuary who stated that the single premium amount charged for uninsured/underinsured motorist coverage for both vehicles was the actuarially appropriate amount for $100,000 per person/$300,000 per accident of coverage, and no more. Plaintiffs argue, in their memorandum in support of the application to vacate, that the testimony of this witness was not credible.
Second, plaintiffs argue that the arbitrators erred in holding that waiver language in the plaintiffs' application for insurance effectively prevented the stacking of underinsured motorist coverage. A close reading of the amended memorandum of decision, however, fails to reveal any discussion by the arbitrators of the application's waiver language. The decision does address language in the policy which attempts to limit liability for uninsured/underinsured motorist coverage, but plaintiffs do not argue error with respect to this portion of the decision. Accordingly, because the arbitrators made no findings as to the waiver language in the insurance application, the court need only address plaintiffs' first claim of error.
The Connecticut Supreme Court has often considered the question of whether stacking of uninsured/underinsured automobile insurance coverage for two passenger cars is permissible: CT Page 7853
 `Three principles of law emerge from our cases. First, we have noted that the issue of aggregation of coverage for multiple vehicles can arise with regard either to "interpolicy stacking" under separate and distinct insurance policies, or to single policy, "intra-policy stacking." Regardless of this difference in form, we have held that General Statutes 38-175c permits an injured claimant to "stack" coverages. . . . Second, in the context of cases involving "intra-policy stacking," . . . we have held that such stacking is particularly appropriate when . . . "`each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles.'" Safeco Ins. Co. v. Vetre, [174 Conn. 329, 334, 387 A.2d 539 (1978)]; Nationwide Ins. Co. v. Gode, [187 Conn. 386, 395, 446 A.2d 1059 (1982)]. Third, relying on regulations enacted pursuant to General Statutes 38-175a and 33-175c, we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes . . . . The regulation nowhere authorizes an insurer contractually to interdict "stacking." Accordingly, we have held that uninsured and underinsured motorist coverage can be "stacked" despite language in the relevant insurance policy that purports explicitly to prohibit "stacking" of such coverage in the event that two automobiles are insured under the same policy.' (Emphasis added.) Allstate Ins. Co. v. Ferrante, 201 Conn. 478, 481-84, 518 A.2d 373 (1986).
Nicolletta v. Nationwide Ins. Co., 211 Conn. 640, 645-46,560 A.2d 964 (1989).
A thorough review of Connecticut law fails to reveal any cases which address the question of whether stacking is prohibited when a single premium is charged for uninsured/underinsured motorist coverage for two vehicles under one policy.[2]
Defendant maintains, in its memorandum in opposition to the application to vacate, that the Connecticut Supreme Court in CT Page 7854 Nationwide Ins. Co. v. Gode, 187 Conn. 386, 446 A.2d 1059
(1982), overruled on other grounds in Covenant Ins. Co. v. Coon,220 Conn. 30, 36 n. 6, 594 A.2d 977 (1991), held that "`stacking' for UM [uninsured/underinsured] coverage is derived from the expectation that where two premiums are paid for two vehicles an individual may reasonably expect double coverage." (Emphasis provided by defendant.) Therefore, defendant concludes that when only a single premium is charged for uninsured/underinsured motorist coverage, as in the present case, single coverage is all that one may reasonably expect.
At the onset of the Gode opinion, the Connecticut Supreme Court explained the concept of stacking as follows:
"`[s]tacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family. . .' Travelers Ins. Co. v. Pac, 337 So.2d 397, 398
(Fla.App. 1976)." Gode, supra, 388-89 n. 2. Later in the opinion, the court observed that "`[w]here two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums.'" Id., 396, quoting Yacobacci v. Allstate Ins. Co., 33 Conn. Sup. 229,231, 372 A.2d 987 (Super.Ct. 1976).
However, while the court in Gode did state that the payment of two premiums for two vehicles creates a reasonable expectation of double coverage, the court never held that an insured must pay a separate premium per vehicle to have a reasonable expectation of double or "stacked" uninsured/underinsured motorist coverage. It is true that the Connecticut Supreme Court has consistently held that:
 in the context of cases involving "intra-policy stacking," . . . such stacking is particularly appropriate when . . . "`each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles.'"
(Emphasis added.) Allstate Ins. Co. v. Ferrante, supra, 482, quoting Safeco Ins. Co. v. Vetre, supra, 334; see also Nicolletta, supra, 645; Gode, supra, 395. However, the Connecticut Supreme Court has never held the above circumstances to be the exclusive or sole circumstances under which CT Page 7855 intra-policy stacking would be permissible. The court has neither made such a holding nor considered the question. Instead, what the Supreme Court has unequivocally held with regard to stacking is that General Statutes 38-175c (presently38a-336) allows an insured to stack uninsured/underinsured motorist coverage and that the right to stack may not be curtailed by the insurer, even through the use of explicit language in the insurance policy which states that stacking is prohibited. See Nicolletta, supra, 645-46, quoting Allstate, supra, 431-84. If explicit language in the policy has been held to be ineffectual in preventing stacking, it is difficult to believe that insurer Middlesex's more subtle attempt to prevent stacking in the present case through the use of the phrase "One Premium Per Policy" in the Declarations Page would be any more successful in preventing stacking. Therefore, the court concludes that, given the Supreme Court's strong and unequivocal policy in favor of stacking, the plaintiff insureds in the present case should have been permitted to stack the uninsured/underinsured motorist coverage which they purchased for their two vehicles. The mere fact that a single premium was charged for uninsured/underinsured motorist coverage for the two vehicles, rather than a separate premium being charged for each vehicle, cannot undo the court's long-standing policy in support of intra-policy stacking.
Accordingly, the court concludes that the arbitration panel erred in concluding that plaintiffs were not entitled to stack their uninsured/underinsured motorist coverage for purposes of determining the available amount of such coverage. For that reason, the plaintiffs' application to vacate the arbitration award is granted. Further proceedings will be conducted by the court at the request of either party.
Schaller, J.