[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Factual Background
On November 21, 1998, the plaintiff Michael Vitanza, was struck by a hit and run driver while standing in the street, next to a parked car, in White Plains, N.Y. The injuries were severe. The plaintiff was insured by the defendant, Amica Mutual Insurance Company (Amica). The policy in question provided for $100,000 uninsured and underinsured motorist coverage (UM) and was issued in Connecticut.
At the time of the accident, the plaintiff resided in Connecticut with his mother who owned an automobile insured by the Hartford Insurance Company of the Midwest (Hartford), which provided for an UM coverage of $250,000.
The plaintiff has sued in a declaratory judgment action against Amica and Hartford to determine its rights for UM benefits under the respective policies.
Amica has paid $49,892.50 in "reparations benefits" to the plaintiff and agreed to stipulate for the pending motions for summary judgment that $47,021.50 of that amount was paid as direct indemnity to physicians, hospitals and others for medical expenses. See footnote 1, p. 4 of Amica, Memorandum of Law, December 5, 2001.
These "reparation benefits" were paid to the plaintiff, because Amica first determined that it was required to provide Personal Injury Protection benefits per New York law. See Affidavit of Michael A. Funaro, 7/10/01, Exh. B attached to the defendant Amica's Motion for Summary Judgment.
Pleading Status
The pleadings are closed. There have been Motions for Summary Judgment filed by Amica and Hartford on December 5, 2001. In response, the plaintiff filed a Memorandum of Law on January 3, 2002. Amica also filed a CT Page 3237 Memorandum of Law dated January 25, 2002 in response to Hartford's Motion for Summary Judgment. The Court heard oral argument from all parties on February 4, 2002. All parties seek a declaratory judgment on the coverage issues in this case.
Law
A motion for summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Milesv. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000).
"The court may address the merits of a declaratory judgment action upon a motion for summary judgment." Connecticut Indemnity Co. v. Martinez, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 309577 (Jan. 31, 1995, Maiocco, J.), citing United Oil Co. v. UrbanRedevelopment Comm. of Stamford, 158 Conn. 364, 290 A.2d 596 (1969).
The interpretation of an insurance contract is a question of law for the Court. Aetna Life and Casualty Company v. Bulaona, 218 Conn. 51,588 A.2d 138 (1991). An ambiguous provision in an insurance policy will be construed against the party drafting the agreement. See Ceci v.National Indemnity Company, 225 Conn. 165, 171, 622 A.2d 545 (1993).
Decision
A choice of law issue must be addressed first. Though Amica applied New York law in regard to interpreting its coverage obligations to its insured, the Court must weigh the contacts of both New York and Connecticut in determining the appropriate state law to apply. The plaintiff lived in Connecticut at the time of the accident, was insured by Amica which issued a Connecticut policy, lived in the household of his mother, a Hartford insured, was treated by Connecticut doctors and hospitals and now still resides in Connecticut where his personal injury action is being litigated. CT Page 3238
The Court finds that the law of Connecticut governs to the interpretation of the policies and the relevant statutes. Accordingly, the Court finds Amica is not entitled to a credit or offset to its $100,000 UM limit for the money it paid out in benefits to its insured.
Discussion
Amica claims it should be granted summary judgment because its liability under the UM Endorsement is reduced by the amounts paid or payable as Basic Reparations Benefits or PIP benefits. Therefore, Amica claims its maximum exposure to its insured, namely $100,000, will be reduced by the amounts it has already paid to its insured, leaving approximately $50,000 to handle the balance of the claim. Both the plaintiff and Hartford claim that Amica gets no offset for what it has paid because the contract of insurance has not provided for that and because Connecticut does not allow for a credit for reparations benefits paid after 1/1/94, when P.A. 93-297 became effective.
The Amica policy language does not call for a reduction of the amount payable under the uninsured motorist endorsement by the basic reparations benefits (BRB) paid, but rather, it only calls for the reduction of "any amount payable for economic loss under the Uninsured/Underinsured Motorist Coverage." See "Other Coverages" referred to in p. 11 of Amica Memorandum of 11/15/01.
"[A]n insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as 38-175a-6 [now known as § 38a-334] of the Regulations of Connecticut State Agencies expressly authorizes." Allstate Ins. Co. v. Ferrante, 201 Conn. 478,483, 518 A.2d 373 (1986). "[A] limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer." American Universal Ins. Co. v. Del Greco, 205 Conn. 178,196, 530 A.2d 171 (1987).
Amica did not draft its policy of insurance to provide for a reduction of UM benefits for direct indemnity for medical expenses paid or payable under the policy. Our Supreme Court in the case of Chmielewski v. AetnaCasualty Insurance Company, 218 Conn. 646, 673-74, 591 A.2d 101 (1991), said in regard to a UM coverage matter and the uninsured motorist statute:
[I]t permits but does not mandate an insurer to provide for such a limitation of coverage in any policy that the insurer issues. That does not mean, however, that, simply because a given fact pattern CT Page 3239 falls within both the language of the statutory exclusion and a particular policy exclusion, no matter how phrased, both exclusions will apply without regard to whether the policy exclusion was designed to take advantage of the statutory exclusion or whether the two are substantially congruent.
General Statutes § 38a-334-6 (d)(2) of the Regulations of Connecticut States Agencies permitted Amica to draft its insurance policy in a manner which would reduce its uninsured motorist limit by all sums paid or payable to the plaintiff as direct indemnity for medical expenses. The regulation states:
 The policy may also provide that any direct indemnity for medical expense paid or payable under the policy will reduce the damages which the insured recovered under this coverage.
The exact language Amica used in its policy did not accomplish that.
While Amica argues that both its UM endorsement and its Basic Reparations Benefit endorsement provisions allow for the reduction of UM liability by amounts paid as direct or reparation payments, that is not what the policy provides.
The policy merely states:
 Any amount payable for economic loss under Uninsured/Underinsured Motorists Coverage will be reduced by any basic reparations benefits: A. Paid; or B. Payable to an insured under this policy.
It should be noted that the Amica policy does not define "economic loss." It should also be noted that the plaintiff alleges that the total amount of "economic" and non economic" losses is still in dispute. Therefore, the quantity of such claims as well as the "quality" of such claims create an inherent ambiguity which shall be read against the insurer. See Israel v. State Farm Mutual Auto Insurance Co., SC 16474 February 19, 2002.
Amica's policy does not provide for a reduction for all types of direct medical indemnity payments, only for basic reparations benefits. "Basic reparations benefits" include medical expenses as well as other things. Under the Amica policy, applying the limits defined for BRB, Amica is limited to $5,000 of paid BRB as a credit. But Public Act 93-297 rendered CT Page 3240 such a reduction void after January 1, 1994. American ManufacturersMutual Ins. Co. v. Waitt, 1998 Superior Court, judicial district of Tolland at Rockville, Docket No. 63833 (November 5, 1998) (23 Conn. L. Rptr. 188).
The court will not rewrite the contract of an insurer to correct what is now seen as a drafting error. Amica did not draft its policy so as to enable it to take a reduction from the UM benefits provided for any direct medical indemnity paid or payable under the policy.
Others have commented on the consequence befalling an insurer which fails to draft its policy in conformity with changes in state insurance regulations:
 If an insurer wishes to reduce its payment obligations as set forth in the regulations, it must provide for the reductions by the appropriate policy language. . . . If it fails to do so, the insurer will not obtain the reduction. (Citations omitted).
J. Berk M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (2d Ed. 1999) § 6.1, p. 353.
Conclusion
Amica is not entitled to a reduction or offset of money paid. The full UM coverage of $100,000 is still available to the insured per Connecticut law. The Amica Motion for Summary Judgment is denied and the Motion for Summary Judgment of the Hartford is granted.
So Ordered.
JOHN R. DOWNEY SUPERIOR COURT JUDGE