DONALD R. KENT, ADMINISTRATOR (ESTATE OF
MELISSA KENT), ET AL. *v.* MIDDLESEX
MUTUAL ASSURANCE COMPANY
(14641)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued March 23—decision released July 13, 1993

*Jon S. Berk,* with whom was *Claudia A. Baio,* for the appellant (defendant).

*Susan M. Cormier,* with whom were *Leonard I. Shankman* and, on the brief, *Wesley W. Horton,* for the appellees (plaintiffs).

PALMER, J. This case requires us to decide whether General Statutes (Rev. to 1989) § 38-175c[1] entitles an insured to aggregate the underinsured[2] motorist coverage for two vehicles covered under one automobile liability insurance policy if the insured had paid an actuarially appropriate single premium for the underinsured motorist coverage and the policy language expressly excludes the aggregation of coverage. This issue was referred initially to an arbitration panel pursuant to the terms of the policy. A majority of that panel determined that, in the circumstances of this case, the underinsured motorist coverage on the two vehicles could not be aggregated, or "stacked."[3] The trial court subsequently granted the application of the plain-

[1] General Statutes (Rev. to 1989) § 38-175c (b) (2), now recodified as § 38a-336 (d), provided: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[2] Throughout this opinion, the term underinsured motorist coverage encompasses uninsured motorist coverage as well. See *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 14 n.11, 615 A.2d 1032 (1992); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 399–400, 446 A.2d 1059 (1982).

[3] Intrapolicy stacking is the aggregation of the limits of liability for underinsured motorist coverage of each automobile covered under one insurance policy. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388–89 n.2, 446 A.2d 1059 (1982).

tiffs, Donald and Kristine Kent as administrators of the estate of Melissa F. Kent, to vacate the award of the arbitration panel. The defendant, Middlesex Mutual Assurance Company, appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The parties stipulated to the following facts. The plaintiffs are the named insureds on an automobile liability policy issued by the defendant. On October 13, 1990, the decedent, an insured within the policy's coverage for underinsured motorist benefits, was killed in an automobile accident caused by the negligence of an underinsured third party. The decedent's estate recovered $20,000 from the liability insurer of the negligent driver, thereby exhausting the coverage limits of the tortfeasor's policy. At the time of the accident, the plaintiffs were covered by an automobile insurance policy issued by the defendant on the plaintiffs' two vehicles. Under that policy, the defendant agreed to pay all sums that the insureds would be legally entitled to recover as damages from the owner of an underinsured vehicle due to any injuries sustained by an insured as a result of an accident arising out of the use of the underinsured vehicle. The policy provided underinsured motorist limits in the amounts of $100,000 per person and $300,000 per accident. The defendant concedes that the damages resulting from the fatal injuries sustained by the decedent exceed $200,000.[4] Throughout these proceedings, the plaintiffs have contended that the coverage of $100,000 per person is properly aggregated

[4] The defendant has paid $77,000 to the plaintiffs as its pro rata share of the unaggregated underinsured motorist coverage after appropriate setoffs. The parties agree that this payment fully satisfies the defendant's liability to the plaintiffs if we determine that the plaintiffs are not permitted to stack the underinsured motorist coverage.

for each of the two insured vehicles so that the defendant is obligated to provide underinsured motorist coverage of $200,000 per person. The defendant has argued, to the contrary, that stacking is not mandated because the insureds had paid a single, actuarially appropriate premium for underinsured motorist benefits in the amounts of $100,000 per person and $300,000 per accident. The defendant relies also on the language of the declarations page of the policy and the insurance application form, which specifies that the maximum benefit available is $100,000.

A majority of the arbitration panel determined that the defendant's policy provided underinsured motorist coverage in the amount of $100,000 per person and concluded that the plaintiffs were not entitled to any additional payment. The plaintiffs subsequently filed an application to vacate the arbitration award. The trial court concluded that the arbitrators had improperly determined that the plaintiffs were not entitled to aggregate their underinsured motorist coverage for the purpose of determining the total available amount of such coverage, and therefore vacated the award. The defendant claims that the trial court improperly applied the principles of intrapolicy stacking to this case and seeks reinstatement of the arbitrators' award. The gravamen of the defendant's argument is that the plaintiffs, who received the benefit for which they had paid, could not reasonably have expected aggregated coverage.

We must consider again the applicability of intrapolicy stacking principles to specific facts and circumstances. See *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 530, 569 A.2d 541 (1990); *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 453, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 394–97, 446 A.2d

1059 (1982); *Safeco Ins. Co.* v. *Vetre*, 174 Conn. 329, 333–35, 387 A.2d 539 (1978). We have repeatedly held that General Statutes (Rev. to 1989) §§ 38-175a[5] and 38-175c,[6]

---

[5] General Statutes (Rev. to 1989) § 38-175a, now recodified as § 38a-334, provided in relevant part: "MINIMUM PROVISIONS IN AUTOMOBILE LIABILITY POLICIES. (a) The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance polices issued after the effective date of such regulations and covering private passenger motor vehicles, as defined in subsection (g) of section 38-319 . . . registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the . . . uninsured motorists coverages under such policies, shall make mandatory the inclusion of . . . uninsured motorists coverages . . . .

"(b) . . . . Nothing contained in such regulations or in sections 38-175a to 38-175e, inclusive, shall prohibit any insurer from affording broader coverage under a policy of automobile liability insurance than that required by such regulations."

[6] General Statutes (Rev. to 1989) § 38-175c, now recodified as § 38a-336, provided in relevant part: "UNINSURED MOTORIST COVERAGE. (a) (1) Every such [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided *each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to the named insured.* . . .

"(2) Notwithstanding any provision of this section to the contrary, every such [automobile liability insurance] policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. . . .

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment

and § 38-175a-6 (a),[7] now § 38a-334-6, of the Regulations of Connecticut State Agencies, which mandate that automobile liability insurance polices include underinsured motorist coverage, do not prohibit the stacking of underinsured motorist coverage for more than one passenger automobile. *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 35, 594 A.2d 977 (1991); *Cohn* v. *Aetna Ins. Co.,* supra, 529; *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 645–46, 560 A.2d 964 (1989); *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 481–82, 518 A.2d 373 (1986); *Dixon* v. *Empire Mutual Ins. Co.,* supra, 452–53; *Nationwide Ins. Co.* v. *Gode,* supra; *Safeco Ins. Co.* v. *Vetre,* supra, 332–33; see also *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 448–53, 370 A.2d 1006 (1976). Indeed, we have found stacking to be available when the insured has paid separate premiums for the underinsured motorist coverage afforded to each vehicle. *Nationwide Ins. Co.* v. *Gode,* supra; *Safeco Ins. Co.* v. *Vetre,* supra, 333–35; see also *Pecker* v. *Aetna Casualty & Surety Co.,* supra, 447. "The reason for this is the common sense notion that such a result falls within the reasonable expectations of the parties to the insurance contract"; *Cohn* v. *Aetna Ins. Co.,* supra; because an insured who " 'pay[s] a double premium [can reasonably] expect double coverage. . . .' " *Yacobacci* v. *Allstate Ins. Co.,* 33 Conn.

---

of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." (Emphasis added.)

[7] Section 38-175a-6 of the Regulations of Connecticut State Agencies, now § 38a-334-6, provided in relevant part: "(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent."

Sup. 229, 231, 372 A.2d 987 (1976);[8] see *Nationwide Ins. Co.* v. *Gode,* supra, 396. We have noted that "[t]his is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles." (Internal quotation marks omitted.) *Cohn* v. *Aetna Ins. Co.,* supra, 530; *Nationwide Ins. Co.* v. *Gode,* supra, 395. Moreover, once it has been established that an insurer is obligated to stack the underinsured motorist coverage in the policy, as it is when separate, additional premiums have been paid for coverage on two vehicles, the insurer may not reduce its liability for such aggregated coverage even through explicit policy language, except within the narrow context of the exceptions permitted under § 38-175a-6 (d) of the Regulations of Connecticut State Agencies.[9]

[8] The concept of intrapolicy stacking in Connecticut originated in *Yacobacci* v. *Allstate Ins. Co.,* 33 Conn. Sup. 229, 231, 372 A.2d 987 (1976), which relied upon the seminal decision of the Kansas Supreme Court in *Sturdy* v. *Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969). Just as her sojourn in Oz forever transformed Dorothy, the adoption of *Sturdy* has altered the landscape of underinsured motorist coverage in Connecticut. See L. Baum, The Wonderful Wizard of Oz (1900).

[9] Section 38-175a-6 (d) of the Regulations of Connecticut State Agencies, now § 38a-334-6, provided: "LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment." See *Travelers Indemnity Co.* v. *Malec,* 215 Conn. 399, 576 A.2d 485 (1990).

The defendant does not contend that any of these exceptions permits it to avoid aggregating coverage in this case. See *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 332–33, 387 A.2d 539 (1978).

*Cohn* v. *Aetna Ins. Co.*, supra; *Nicolletta* v. *Nationwide Ins. Co.*, supra; *Allstate Ins. Co.* v. *Ferrante*, supra, 483–84; *Nationwide Ins. Co.* v. *Gode*, supra, 397–400. In the present case, the defendant argues that it is not liable to pay the aggregate amount of the underinsured coverage and that the plaintiffs had no reasonable expectation that coverage would be aggregated because the policy provides that such stacking is not permitted *and* the insureds were charged and paid a single actuarially appropriate premium for underinsured motorist coverage on their own vehicles. For the following reasons, we agree with the defendant.

On the basis of the testimony at the arbitration hearing and a review of the policy documents and stipulated facts, a majority of the arbitrators found that the plaintiffs could not have had an objectively reasonable expectation of stacked coverage. With respect to the testimony, the plaintiffs[10] professed no expectation of stacked coverage. Instead, they candidly admitted that they simply were seeking to "obtain good coverage" and "save a few dollars." As the panel concluded, their testimony "provide[d] no basis for a finding of any expectation regarding stacking of [underinsured motorist] coverage."

The policy documents also fail to support the claim that the parties reasonably expected stacked coverage, for, as the arbitrators found, the policy "unambiguously provide[d] uninsured/underinsured motorist coverage of $100,000 per person and no more."[11] Specifically,

---

[10] The plaintiffs testified at the arbitration hearing. The plaintiffs presented no other witnesses.

[11] Section 38-175a-6 (d) of the Regulations of Connecticut State Agencies provided that an insurer may not reduce its underinsured motorist liability except as permitted by that section. See footnote 9. The coverage must exist, however, before it can be reduced. See *Middlesex Ins. Co.* v. *Quinn*, 27 Conn. App. 573, 581–82, 609 A.2d 1008 (1992), aff'd, 225 Conn.

the named plaintiff signed the application for insurance immediately following the statement: "I understand and acknowledge that the limits of UNINSURED or UNDERINSURED MOTORIST COVERAGE are applicable ONCE per claim regardless of the number of vehicles or operators on the policy now or in the future." In addition, the automobile policy issued by the defendant to the plaintiffs provided in part:

"LIMIT OF LIABILITY

The maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the amount of Uninsured Motorists Coverage limits shown in the Declarations. This is the most we will pay regardless of the number of:

1. *Covered persons*
2. Claims made;
3. Vehicles involved in the accident; or
4. *Covered autos.*" (Emphasis in original.)

Moreover, the declarations page of the insurance policy specified the limits of coverages and premiums due. Although separate premiums are listed for each of the two vehicles insured by the policy for the bodily injury, property damage and basic reparations benefits coverages, the declarations expressly provide otherwise for underinsured motorist coverage:

"Uninsured/Underinsured Motorist
$100,000 per person
$300,000 per accident
Uninsured Premium $42.00
(One premium per policy, included in total policy premium)"[12]

---

257, 622 A.2d 572 (1993). Because we determine that the policy contains "nothing to stack"; *Yeager* v. *Auto-Owners Ins. Co.,* 335 N.W.2d 733, 738 (Minn. 1983); this regulation is inapposite.

[12] The defendant's actuary testified that the premium charged was actuarially appropriate for coverage of $100,000 and actuarially inappropriate

The plaintiffs admitted that they had not read these documents, which plainly describe the underinsured motorist premium and coverage.[13]

This does not conclude our analysis, however, because the policy language is not dispositive of the reasonable expectations of the parties to such a contract. Indeed, "we have held that . . . underinsured motorist coverage can be 'stacked' despite language in the relevant insurance policy that purports explicitly to prohibit 'stacking' of such coverage in the event that two automobiles are insured under the same policy." *Allstate Ins. Co.* v. *Ferrante,* supra; *Nicolletta* v. *Nationwide Ins. Co.,* supra, 646. In all of our cases upholding the right of the insured to stack underinsured motorist coverage, however, the policyholder had paid a separate, additional premium for the additional coverage. *Covenant Ins. Co.* v. *Coon,* supra; *Cohn* v. *Aetna Ins. Co.,* supra, 530; *Nicolletta* v. *Nationwide Ins. Co.,* supra,

---

for coverage of $200,000. The actuary also testified that because the premium charged is based solely on the amount of coverage purchased, "It is not relevant whether it's one, two, three or four vehicles . . . that are insured under that policy." Although the plaintiffs do not accept these conclusions, they introduced no evidence to the contrary.

[13] A policy of insurance is to be interpreted by the same general rules as those governing the construction of any written contract. See *Izzo* v. *Colonial Penn Ins. Co.,* 203 Conn. 305, 309, 524 A.2d 641 (1987). If the insurance coverage is defined in terms that are ambiguous, such ambiguity will be resolved against the insurer. See *Ceci* v. *National Indemnity Co.,* 225 Conn. 165, 171, 622 A.2d 545 (1993); *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 256, 268 A.2d 663 (1970). We may not, however, " 'indulge in a forced construction ignoring provisions [of the policy]' "; *Horak* v. *Middlesex Mutual Assurance Co.,* 181 Conn. 614, 617, 436 A.2d 783 (1980); and we must give the natural and ordinary meaning to plain and unambiguous language in the provisions of an insurance contract. *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 15, 615 A.2d 1032 (1992); *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991); *Gottesman* v. *Aetna Ins. Co.,* 177 Conn. 631, 634, 418 A.2d 944 (1979). In applying these principles to the insurance policy in this case, the arbitration panel found that the contract language clearly prohibited stacking.

645; *Allstate Ins. Co.* v. *Ferrante,* supra, 482; *Dixon* v. *Empire Mutual Ins. Co.,* supra, 453; *Nationwide Ins. Co.* v. *Gode,* supra, 394–97; *Safeco Ins. Co.* v. *Vetre,* supra, 333; *Pecker* v. *Aetna Casualty & Surety Co.,* supra, 447–53. In that circumstance, the insured was entitled to aggregate coverage because the parties reasonably expected such additional coverage. The same result is not compelled here, however, because the insureds paid a single actuarially appropriate premium for the underinsured motorist coverage.

The plaintiffs acknowledge that the right of an insured to aggregate underinsured motorist coverage is based upon the reasonable expectations of the parties. The plaintiffs maintain, however, that the payment of a separate, additional premium is not a prerequisite to a determination that stacking is available and that aggregation of coverage is mandated in this case. We agree, of course, that aggregated coverage may be available to an insured even in the absence of the payment of a double premium if stacking is the reasonable expectation of the parties. We do not agree, however, that a policyholder who insures two passenger vehicles under one policy but who pays a single premium for underinsured motorist coverage necessarily is entitled to aggregate coverage. The availability of stacking depends upon the reasonable expectations of the parties to the contract, a determination to be gleaned from the facts and circumstances of each case. In the present case, the arbitration panel considered the evidence and concluded that "there is nothing about the facts . . . which would justify an expectation of stacked coverage on the part of the [plaintiffs]."

Furthermore, as we noted previously, in this case not only did the policy specifically exclude stacking, but the premium was calculated accordingly. Thus, the plaintiffs' claim of stacking in this case could only be justi-

fied upon a conclusion that stacking is required as a matter of law whenever the policy covers more than one vehicle. We can find no justification for such a conclusion, either in the statutes or regulations regarding underinsured motorist coverage.

The plaintiffs concede, moreover, that there is no required stacking of third party liability coverage, of no fault basic reprations coverage, of collision coverage, or of comprehensive coverage, simply because the policy involved covers more than one vehicle. We can perceive no reason to hold, however, as the plaintiffs' argument suggests, that stacking of underinsured motorist coverage is required as a matter of law despite the language of the policy and the lack of any reasonable expectation thereof.[14]

The trial court recognized that this case presents a stacking issue of first impression and relied upon what it characterized as this court's "strong and unequivo-

---

[14] This court has never held, contrary to the view expressed in the dissent, that General Statutes (Rev. to 1989) § 38-175c (a) (2) mandates stacking. We have consistently recognized, rather, that § 38-175c (a) (2) does not specifically address the issue of stacking and that the statute does not *prohibit* stacking when such aggregation of coverage is consistent with the reasonable expectations of the parties. *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 529, 569 A.2d 541 (1990) ("[w]hile . . . the [underinsured] motorist statute . . . does not specifically address the issue of 'stacking' coverage, we have repeatedly held that a fair reading of the statute discloses no prohibition against such aggregations"); see also *Curran* v. *Aetna Casualty & Surety Co.,* 222 Conn. 657, 669, 610 A.2d 1198 (1992); *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 35, 594 A.2d 977 (1991). Section 38-175c (a) (2) simply provides that the underinsured motorist coverage in an automobile liability policy shall be: (1) the amount of liability insurance provided in the policy, in this case $100,000 per person and $300,000 per accident, unless the insured requests in writing less underinsured motorist coverage; but (2) not less than $20,000 per person and $40,000 per accident, as required by General Statutes § 14-112 (a). Section 38-175c (a) (2), therefore, neither mandates nor prohibits stacking. As we have repeatedly held, whether an insured may aggregate the limits of liability for underinsured motorist coverage depends upon the reasonable expectations of the parties.

cal policy in favor of stacking" as reflected in our decisions upholding the right of insureds to aggregate coverage. See *Covenant Ins. Co.* v. *Coon,* supra; *Cohn* v. *Aetna Ins. Co.,* supra; *Nicolletta* v. *Nationwide Ins. Co.,* supra; *Allstate Ins. Co.* v. *Ferrante,* supra; *Dixon* v. *Empire Mutual Ins. Co.,* supra; *Nationwide Ins. Co.* v. *Gode,* supra; *Safeco Ins. Co.* v. *Vetre,* supra; *Pecker* v. *Aetna Casualty & Surety Co.,* supra. As we have discussed, however, those cases hold only that an insurer may not avoid liability for stacking, even though language in the policy purports to do so, if the insured has paid a separate, additional premium for underinsured motorist coverage. To permit an insurer so to limit its liability under such circumstances would deprive the insured of a benefit for which the policyholder has paid, a result not consistent with the reasonable expectations of the parties. Those are not the circumstances here. Because there was substantial evidence to support the arbitrators' determination that the plaintiffs could not have had a reasonable expectation of stacked coverage; *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 660–61 n.15, 591 A.2d 101 (1991); the trial court improperly granted the plaintiffs' application to vacate the arbitration award.[15]

Accordingly, we conclude that General Statutes (Rev. to 1989) § 38-175c does not require that an insurer aggregate the underinsured motorist coverage provided in a policy covering two passenger vehicles if the

---

[15] As an alternative ground for affirmance, the plaintiffs contend that the evidence regarding the premium charged for the underinsured motorist coverage lacked sufficient probative value to establish that an actuarially appropriate premium was charged. The plaintiffs, however, did not raise this claim in arbitration or in the trial court, and therefore it was not considered. In such circumstances and because a resolution of that claim requires factual determinations, we will not review it. See *Peck* v. *Jacquemin,* 196 Conn. 53, 61–62 n.13, 491 A.2d 1043 (1985); see also 1 W. Horton & S. Cormier, Connecticut Practice—Practice Book Annotated, Rules of Appellate Procedure (1993) §§ 4013, 4185, authors' comments and cases cited.

insured has paid a single actuarially appropriate premium for the underinsured motorist coverage and the policy expressly excludes stacked coverage.

The judgment is reversed and the case is remanded with direction to render judgment denying the application to vacate the arbitration award.

In this opinion BORDEN, NORCOTT and KATZ, Js., concurred.

BERDON, J., dissenting. This case must be viewed within the context of our public policy. "The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured[/underinsured] motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute." *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982). This public policy is further underscored by General Statutes (Rev. to 1989) § 38-175c, now recodified as § 38a-336 (a) (2), which requires that each policy must provide underinsured motorist coverage "with limits for bodily injury and death equal to those purchased to protect against loss . . . unless the insured requests *in writing* a lesser amount, but not less than the limits specified in subsection (a) of section 14-112." (Emphasis added.)

The majority opinion does not square with *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 560 A.2d 964 (1989), wherein we held that § 38-175c (a) (2) does not provide a statutory basis for limiting stacking. The language in the *Nicolletta* policy specifically limited the amount of the uninsured/underinsured motorist coverage for the second automobile to an amount equal to the minimum required by law, which in that case was an amount less than the liability coverage on that auto-

mobile. Although the plaintiff in *Nicolletta* had paid two separate premiums, this court's decision permitting stacking to the full extent of the liability coverage on each automobile was not predicated on that fact. It was on the basis of § 38-175c (a) (2) that this court concluded that the statute does not provide a statutory basis for limiting stacking of uninsured/underinsured motorist coverage *unless* the insured chooses to waive in writing the additional coverage. Id., 647.

This was underscored in *Nicolletta* v. *Nationwide Ins. Co.*, supra, 645–46, when we quoted from *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 481–84, 518 A.2d 373 (1986), and emphasized the following: "This court has, on a number of occasions, considered the stacking of uninsured and underinsured automobile insurance coverage for two passenger cars. Three principles of law emerge from our cases. First, we have noted that the issue of aggregation of coverage for multiple vehicles can arise with regard either to interpolicy stacking under separate and distinct insurance policies, or to single policy, intra-policy stacking. Regardless of this difference in form, *we have repeatedly held that General Statutes § 38-175c* [now § 38a-336] *permits an injured claimant to stack coverages.* . . . Second, in the context of cases involving intra-policy stacking, such as the one presently before us, we have held that such stacking is particularly appropriate when, as here, each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles. . . . Third, relying on regulations enacted pursuant to General Statutes §§ 38-175a and 38-175c [now §§ 38a-334 and 38a-336, respectively], *we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Con-*

*necticut State Agencies expressly authorizes.* . . . . That regulation permits an insurer to limit its liability to the extent that damages have been paid by or on behalf of any person responsible for the injury, have been paid or are payable under any workers' compensation or disability benefits law, have been paid under the policy in settlement of a liability claim, or have been paid or are payable under any provisions of the policy for direct indemnity for medical expense or basic reparations benefits. *The regulation nowhere authorizes an insurer contractually to interdict stacking.* Accordingly, we have held that uninsured and underinsured motorist coverage can be stacked despite language in the relevant insurance policy that purports explicitly to prohibit stacking of such coverage in the event that two automobiles are insured under the same policy." (Citations omitted; emphasis added in *Nicoletta;* internal quotation marks omitted.) See also *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 397–98, 446 A.2d 1059 (1982) (stacking permitted despite policy provision stating that "[i]n no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us").[1]

---

[1] Justice Shea's dissent in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982), sharpens the majority opinion in *Gode* that whether two premiums are charged is not relevant in determining whether stacking should be permitted. Justice Shea noted the following: "Whether such an expectation is reasonable in the case of a single policy containing a clause like the one we are considering which unambiguously precludes intra-policy stacking is greatly to be doubted. Nevertheless, insurance policies are 'contracts of adhesion,' not subject to the normal bargaining procedures of ordinary contracts and it would be unconscionable to permit an insurer to collect a premium twice for the same risk. The difficulty in applying that principle to this case is that we do not know from anything in the record whether the premium charged for uninsured motorist coverage with respect to each of the two vehicles is double the premium applicable to a single vehicle." Id., 404–405. Thus, although it was important to Justice Shea whether two premiums had been charged, clearly the majority decision was not predicated on that distinction because the majority did not *know* whether one or two premiums had been charged.

In addition, the legislative history of No. 83-461 of the 1983 Public Acts, which created § 38-175c (a) (2), makes it clear that "the statute does not give an insurance carrier a similar option to reduce the coverage." *Nicolletta* v. *Nationwide Ins. Co.*, supra, 647. " 'Under sub-section 2, it would require each insured who purchases more than the legally required amount of liability insurance would [sic] receive the same amount of uninsured motorist coverage. *The insured would have an opportunity to waive in writing the additional uninsured motorist coverage.* This change would increase the consumer's awareness of the value of low-cost uninsured motorist coverage which protects the insured and his family members. Apparently many drivers purchase $100,000.00 or more of liability coverage but leave their uninsured motorist coverage at the minimum of $20,000.00 – $40,000.00. *Sub-section 2 which gives such a driver an increased amount of uninsured motorist coverage, unless he makes a conscious decision not to purchase it.'* (Emphasis added.) 26 S. Proc., Pt. 9, 1983 Sess., p. 3055, remarks of Senator Wayne A. Baker." *Nicolletta* v. *Nationwide Ins. Co.*, supra, 647.

Applying § 38-175c (a) (2) to the present case, the limit of liability on each of the two automobiles was $100,000; therefore, the uninsured/underinsured coverage on *each* automobile was $100,000. Consequently, the aggregation or stacking of the $100,000 available for each automobile requires uninsured/underinsured motorist coverage of $200,000. Section 38-175c (a) (2) does not permit the insurer to limit uninsured/underinsured motorist coverage to $100,000, because it would be less than the limits of liability coverage.

The majority opinion is predicated on the "reasonable expectations" of the insured. This, indeed, was the trial court's rationale in *Yacobacci* v. *Allstate Ins. Co.*, 33 Conn. Sup. 229, 372 A.2d 987 (1976), the first Connecticut case to recognize the concept of intrapolicy

stacking. "Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums. See *Sturdy* v. *Allied Mutual Ins. Co.,* 203 Kan. 783 [457 P.2d 34 (1969)]." *Yacobacci* v. *Allstate Ins. Co.,* supra, 231. The "reasonable expectation" rationale no longer applies. The 1983 legislative mandate clearly established our public policy of requiring insurers to provide uninsured/underinsured coverage to the extent of the liability limits unless the insured waives, in writing, such coverage. Public Acts 1983, No. 83-461. If the reasonable expectations of the insured were the touchstone for allowing stacking, this court would not have permitted stacking in *Allstate Ins. Co.* v. *Ferrante,* supra, 487 n.7 (policy provision limiting insurer's liability to "the amount shown for any one auto"). Surely, the contractual provision in *Ferrante* would have dispelled any expectation of stacking on the part of the insured; nevertheless, this court permitted stacking. Id., 488; *Nationwide Ins. Co.* v. *Gode,* supra, 400.

I agree with the well reasoned opinion of the trial court, *Schaller, J.,* now a judge of the Appellate Court, as follows: "If explicit language in the policy has been held to be ineffectual in preventing stacking [in *Nicolletta* v. *Nationwide Ins. Co.,* supra], it is difficult to believe that insurer Middlesex's more subtle attempt to prevent stacking in the present case through the use of the phrase 'One Premium Per Policy' in the Declarations Page would be any more successful in preventing stacking. Therefore, the court concludes that, given the Supreme Court's strong and unequivocal policy in favor of stacking, the plaintiff insureds in the present case should have been permitted to stack the uninsured/underinsured motorist coverage which they purchased for their two vehicles. The mere fact that a

single premium was charged for uninsured/under-insured motorist coverage for the two vehicles, rather than a separate premium being charged for each vehicle, cannot undo the court's long-standing policy in support of intra-policy stacking."

Furthermore, whether a premium is charged is not significant.[2] What is significant is that the insured has two automobiles, both insured by the policy, and that the legislature has mandated uninsured/underinsured motorist coverage equal to the liability limits on each automobile unless the insured " 'makes a conscious decision not to purchase it.' " *Nicolletta* v. *Nationwide Ins. Co.*, supra, 647.

The insurance carrier may limit its liability for uninsured/underinsured coverage by obtaining a waiver to the extent permitted by § 38a-336 (a) (2). By requiring a waiver, the statute seeks to ensure that the average person understands what he or she is giving up. The majority opinion obviates the need for the statutory waiver requirement. Indeed, as the plaintiffs argue, the majority opinion will "in effect judicially eliminate stacking, as every insurer would then charge one premium and restrict coverage to the limits applicable to one vehicle no matter how many vehicles were covered under the policy."

___

[2] "Although many courts have implicitly or explicitly determined the right to 'stack' coverages on the basis that separate premiums were paid for separate coverages, ultimately this should prove to be a distinction of negligible significance. Furthermore, even the payment of a separate premium is probably an insignificant factor. Some insurance companies do not even charge a separate premium for the uninsured motorist coverage: the cost of the coverage is included in the premium charged for the liability insurance. Whether a separate premium is charged for the uninsured motorist insurance has no bearing on the existence of coverage. Since coverage exists without regard to whether a premium is paid, it is inappropriate to determine the 'stacking' question on the basis of whether a separate premium was paid." 1 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1985) § 13.12, p. 627.

The elimination of stacking may be an appropriate public policy decision for the legislature to make, but it is beyond this court's jurisdiction to impose that result.

Accordingly, I respectfully dissent.