[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case comes before the court on the defendant's application to confirm and the plaintiff's application to vacate an arbitration award issued to resolve a dispute concerning uninsured motorist insurance benefits.
The following factual background is not in dispute. On June 19, 1992, the plaintiffs, George F. Dobuzinsky and Judith A. Dobuzinsky, were injured in an automobile accident caused by the negligence of an uninsured motorist. Both plaintiffs made claims against the defendant seeking payment of uninsured motorist benefits under a policy of automobile insurance issued by the defendant on January 7, 1991. That policy was in effect as of the date of the accident.
On April 26, 1995, and on dates thereafter, a three-member arbitration panel met to adjudicate the plaintiffs' claims. On May 12, 1995, two of the three arbitrators issued an award in the amount of $265,000 to Judith Dobuzinsky. The arbitrators found that the policy provided for $300,000 in coverage per accident. They determined that $35,000 had been paid to Mrs. Dobuzinsky before the arbitration and awarded her the balance of the coverage found, without determining whether that amount fully compensated her for her injuries. The arbitrators made no award to George Dobuzinsky on the ground that the coverage was exhausted by the award to his spouse. The dissenting arbitrator opined that the coverage should have been held to be $900,000, not $300,000.
The plaintiffs claim that the arbitrators exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Specifically, the plaintiffs claim that the award failed to apply the applicable law, that the arbitrators failed to allow intra-policy stacking of uninsured motorist coverage and failed to award full damages to the plaintiffs.
Standard of Review
Since arbitration of uninsured/underinsured motorist coverage is compelled by statute, General Statutes § 38-175c, the CT Page 8710 parties are entitled to de novo review of legal issues decided by the arbitrators. American Universal Insurance Co. v. DelGreco,205 Conn. 178 (1987). With regard to factual determinations made by the arbitrators, this court must decide whether those determinations are supported by substantial evidence. Chmielewskiv. Aetna Casualty Surety Co., 218 Conn. 646, 656 (1991).
Review
The Connecticut Supreme Court has had many occasions to review claims concerning stacking of uninsured/underinsured motorist benefits. It has explicated those rulings most recently in Kent v. Middlesex Mutual Assurance Co., 226 Conn. 427, 438
n. 14 (1993). The Court has explained that in Covenant InsuranceCo. v. Coon, 220 Conn. 30 (1991); Cohn v. Aetna Insurance Co.,213 Conn. 525 (1990), Nicolletta v. Nationwide Insurance Co.,211 Conn. 640 (1989); Allstate Insurance Co. v. Ferrante, 201 Conn. 478
(1986); Dixon v. Empire Mutual Insurance Co., 189 Conn. 449
(1983); Nationwide Ins. Co. v. Gode, 187 Conn. 386 (1982); SafecoIns. Co. v. Vetre, 174 Conn. 329 (1978), and Pecker v. AetnaCasualty Surety Co., 171 Conn. 443 (1976) it held "only that an insurer may not avoid liability for stacking, even though language in the policy purports to do so, if the insured has paid a separate, additional premium for underinsured motorist coverage," Kent v. Middlesex Mutual Assurance Co., 226 Conn. 439. The Court noted in Kent that where an insured has a reasonable expectations because of payment of separate premiums for each of the coverages, that the coverages will be aggregated in the event of a loss, the insurer cannot limit its liability to defeat that reasonable expectation. In Kent, the Supreme Court found that substantial evidence supported the arbitrators' determination that the insured had paid only a "single actuarially appropriate premium for the underinsured motorist coverage," that the policy expressly excluded stacking, and that the fact that multiple cars were covered did not create an obligation to provide a multiple of the underinsured coverage.
The issue before this court is whether there was substantial evidence to support the arbitrators' conclusion that the defendant was obligated to pay uninsured benefits of $300,000 and not three times that amount as to each plaintiff because the insurance policy at issue covered three cars.
The policy declarations setting forth the coverages and charges for those coverages in effect at the time of the accident CT Page 8711 specified under "uninsured/underinsured motorist" that the coverage was "$300,000 per accident." The same section contains the following: statement "One premium per policy: $61.00." The declaration sheet contains columns to indicate the charge for each kind of coverage for each of the three insured vehicles (bodily injury, basic reparation benefit, coverage for damage). Unlike the other coverages, under the category for uninsured/underinsured, the declaration sheet does not contain a separate charge per car but only the notation "One premium per policy: $61.00"
The text of the policy provided that "[t]he maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the amount of the Uninsured Motorists Coverage limits shown in the Declaration. This is the most we will pay regardless of the number of 1) covered persons; 2) claims made; 3) vehicles involved in the accident; or 4) covered autos."
The plaintiffs argue that without evidence that the premium for uninsured/underinsured coverage was actuarially appropriate for single coverage in the amount of $300,000, the arbitrators did not have an adequate basis for concluding that the coverage was so limited. While the evidence in Kent v. Middlesex MutualAssurance Co., supra, included such proof, the Supreme Court did not rule that the insurer is required to present an actuarial analysis of the premium charged. Rather, the plaintiffs have the burden of establishing that they had an objectively reasonable expectation that in the event of an accident with an uninsured or underinsured vehicle, their coverage was $300,000 per car, or $900,000 stacked.
The following evidence supports the arbitrators' finding that the coverage was limited to $300,000, without stacking:
1. A single premium was charged for the coverage, not a separate premium as each of three vehicles.
2. The insured signed an application that indicated the coverage was limited to "combined single limit" of $300,000 for "each accident."
3. The insurance application, Exhibit 1 introduced by agreement at the hearing on the application to confirm, was clear and legible, and not smudged like the photocopy used at the arbitration. It states that the applicant "understand[s] and CT Page 8712 acknowledge[s] that the limits of UNINSURED or UNDERINSURED MOTORIST COVERAGE are applicable ONCE per claim regardless of the number of vehicles or operations in the policy now or in the future."
4. The policy's declaration sheet for the period January 15, 1991 to July 15, 1991 identifies the uninsured/underinsured coverage as "$300,000 per accident; one premium per policy: $46.00."
5. The declaration sheets for renewals of the policy, including the renewal in effect on the date of the accident, contain the same statement.
6. The text of the insurance policy clearly describes a limitation to the amount stated on the declaration sheet, regardless of the number of insureds, claims, or vehicles.
The plaintiffs have relied on the claim that the insurance agent told them they would receive stacked coverage. The testimony of that witness was that he made no such representation but merely assumed multiple coverage without reading the description of the coverage either on the application or in the policy.
The plaintiffs have directed this court to the events leading to their purchase of the policy at issue after having had more expensive coverage from another carrier. The plaintiffs' subjective beliefs or expectation about their uninsured/underinsured coverage, which they admitted was not based on reading the application or the policy, is not determinative: the issue is whether the coverage they received is the coverage described in the policy and paid for by the insured or whether the insurer has provided less than the language of the policy or the amount charged would lead a reasonable insured to expect. Kent, supra; Jurrius v. Maccabes Mutual Insurance Co.,587 F. Sup. 1301, 1304 (D. Conn. 1984).
Stacked coverage becomes a reasonable expectation when multiple premiums or premiums based on multiple coverages are charged or when multiple coverages are described in the policy.Berk and Jainchill, Connecticut Law of Uninsured and UnderinsuredMotorist Coverage, 186-187 (1993); Kent, supra.
The plaintiffs have not shown an objectively reasonable basis CT Page 8713 for their expectation, but only a vague impression that the coverage would be the same as in their prior policy.
The arbitrators concluded that the plaintiffs had paid for and received a policy furnishing $300,000 of uninsured motorist coverage per accident. The plaintiffs point to no evidence to establish that the premium charged constituted a windfall to the insurers. While the plaintiffs may have a claim against their agent for failing to obtain the coverage they wanted, there is substantial evidence to support the conclusion that the insurer obligated itself to provide only $300,000 of coverage per UI claim. In their brief, the plaintiffs claim that the print size of the wording of the application for the insurance policy at question was smaller than required by the Insurance Plain Language Act, Gen. Stat. §§ 38a-295 et seq. They have not, however, claimed that the policy itself contained. any such violation. The scope of the uninsured/underinsured coverage is clearly set forth in the policy, as cited above, and it is thepolicy that is the basis of the claim for benefits, not the application.
While the plaintiffs have, in their brief, referred to the single coverage as a "limitation," it is clear from Kent that the insurer was not required either to provide stacked coverage or to obtain a waiver of such coverage. The holding of Kent is that insurers may sell and provide single coverage unless they charge a separate premium for that coverage for each vehicle, such that they have charged for multiple coverage.
The plaintiffs have referred in their brief to facts not contained in the evidence concerning claimed post-accident reductions in their uninsured/underinsured motorist premiums. The transcript of the arbitration indicates that no such evidence was presented to the arbitrators, who cannot be faulted for not considering evidence not presented to; them.
The determination of the majority of the panel that the plaintiffs did not have an objectively reasonable expectation of multiple uninsured/underinsured coverage is supported by substantial evidence, and the conclusions reached upon that evidence are the legal conclusions warranted by that evidence, in that an insurer is obligated to pay only the coverage set forth in the insurance contract with the insured.
The plaintiffs have failed to establish the grounds of their CT Page 8714 application to vacate, correct or modify the award. Their application is denied. The application to confirm the award is granted.
Beverly J. Hodgson Judge of the Superior Court